## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DAVID E. CALLAHAN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )    **Case No. CIV-03-1434-F** |
| | ) |
| **SOUTHWESTERN MEDICAL CENTER,** | ) |
| **et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing *pro se*, brings this action pursuant to 42 U.S.C.

§ 1983, alleging constitutional violations and violation of his civil rights under the

Americans with Disabilities Act (ADA), the Rehabilitation Act (RA) and the Civil Rights

of Institutionalized Persons Act (CRIPA).    The matter has been referred to the

undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §

636(b)(1)(B).    In his original complaint Plaintiff named Southwestern Medical Center as

the sole Defendant in the caption.[1]    In the body of the complaint he named  "Emergency

Room/Xray Technician" as the only Defendant with a notation to "see list of defendants"

identified as working "in the emergency room and xray rm."    Complaint at 1.    However,

the complaint contained no attachment or listing of any other defendants.    In an

amended complaint filed May 3, 2004, Plaintiff named as Defendants Southwestern

Medical Center (SWMC), and for the first time - Dr. Robert Morgan, and John Does

---

[1]Plaintiff alleges that he attempted to file his original complaint on September 19, 2003.  Plaintiff's Motion for Acceptance of Plaintiff's Case [Doc. No. 5].  His documents were received by the Clerk of the Court on October 1, 2003 and returned to Plaintiff for failure to comply with this Court's Local Rules requiring either advance payment of  the filing fee or submission of an application to proceed *in forma pauperis.*  Plaintiff's Motion for Acceptance, Ex. A.  Thereafter, he resubmitted his complaint with the filing fee which was received by the Court on October 9, 2003.

Number One, Two and Three.  Amended Complaint [Doc. No. 20].  Defendants SWMC

and John Doe Nos. One and Two have "specially appeared" and separately moved to

dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1),(2), (4), (5), and (6). [Doc. No.

23 and Doc. No. 24].[2]  Plaintiff has responded to these motions.  [Doc. Nos. 25 and 30].

Additionally, Plaintiff was notified that to the extent Defendant SWMC's motion relied

on and is supported by affidavits or other documents, the provisions of Fed. R. Civ. P. 56

are applicable.  [Doc. No. 34].  Thereafter, Plaintiff filed three additional "motions" with

attached evidentiary materials.[3]  [Doc. Nos. 35, 36 and 37].

For reasons explained more fully below, it is recommended that Defendant

SWMC's motion to dismiss be granted in part and construed in part as a motion for

summary judgment and granted as set forth herein.[4]  It is further recommended that the

---

[2]Counsel appears to believe that a "special appearance" is necessary to object to the jurisdiction of the court, e.g. improper service; however, the distinction between a special appearance for that purpose, and a general appearance, to assert other defenses, was eliminated by the adoption of the Federal Rules Civil Procedure.  Federal courts have long since recognized that the provision of Rule 12(b) of the Federal Rules of Civil Procedure that "no defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion" abolished the  distinction between general and special appearances.  *See Investors Royalty Co. v. Market Trend Survey*, 206 F.2d 108, 111 (10th Cir. 1953). Therefore, the special appearances have been construed in each instance as a general appearance.  It is further noted that the docket sheet does not reflect an entry of appearance by counsel for Defendants as required by LCvR 83.4.

[3]These responses include references to a motion to supplement, a motion to clarify, a motion to amend his complaint and conduct discovery, and a motion to appoint counsel. Nonetheless, within this document Plaintiff responds to various arguments made by Defendant SWMC, and he has attached various medical documents, letters and memos in support of his arguments.  By separate order entered this date Plaintiff's subsequent motion for an extension of time to respond to the Court's order notifying him of the requirements of Rule 56 [Doc. No. 38] has been denied.

[4]Because Plaintiff had been provided an opportunity to present materials pertinent to a Rule 56 motion and has presented his own evidentiary materials in response, Defendant SWMC's motion to dismiss may be in part converted to one for summary judgment. *Whitesel v. Sengenberger*, 222 F.3d 861, 866 (10th Cir. 2000) (holding that district court may convert motion to dismiss into motion for summary judgment to consider matters outside the complaint).

motion to dismiss filed by Defendants John Doe Number One and John Doe Number Two
be granted on the ground that these Defendants have not been identified or timely served.
It is also recommended that John Doe Number Three be dismissed, *sua sponte*, on the
same basis. Finally, it is recommended that Defendant Dr. Robert Morgan be dismissed
from the action as a misnamed party who has not been served and that Plaintiff's motion
to amend his complaint to name Dr. Richard Morgan as a defendant be denied.

I. Background and Plaintiff's Claims

In his amended complaint Plaintiff alleges that on September 30, 2001, he was
transported to the emergency room at SWMC in Lawton, Oklahoma, after he blacked out
and was found unconscious on the cell floor by officials at Lawton Correctional Facility
(LCF), a private prison facility. Amended Complaint at 6. Plaintiff alleges that upon
arrival at SWMC, emergency personnel were told by an LCF guard that Plaintiff was
"faking" his injuries and trying to get back in the LCF infirmary. *Id.* at 7. According to
Plaintiff, SWMC emergency personnel believed the LCF guard and therefore
discriminated against him by not taking his injuries seriously. Plaintiff alleges that as he
began coming out of his unconscious state, a male nurse or medical technician (identified
as John Doe Number One) made statements about homosexual behavior, made other
insulting comments, and hit him on the tailbone several times, causing him pain,
suffering, and mental anguish. *Id.* at 8. Plaintiff claims that although he was taken to the
X-ray room, he received incomplete X-rays because the X-ray technician was unable to
get assistance in repositioning Plaintiff for further X-rays. *Id.* at 9. Plaintiff further
claims that a person identified as John Doe Number Two stated, "It's OK, don't do any

3

more–he is from LCF." *Id.* at 10.  According to Plaintiff, during his return to LCF in an

ambulance, he was "insulted" by a  SWMC attendant, identified as John Doe Number

Three. *Id.* at 8 and 10-11.

Plaintiff alleges that the treatment he received at SWMC was inadequate, in

violation of his constitutional rights and various civil rights, and "function[ed] in a

manner of malpractice . . . ." Amended Complaint at 6-7.  He alleges that SWMC refused

to provide him medical care "in a nonbiased [and] nondiscriminating manner" and

therefore denied Plaintiff "'equal access' to adequate medical care (through proper X-rays)

. . . ." *Id.* at 6.[5]  Plaintiff seeks monetary damages, injunctive relief and declaratory

judgment.[6]

## II.  Standards for Dismissal and Summary Judgment

Dismissal under Fed. R. Civ. P. 12(b)(6) is proper if "it appears that the plaintiff

can prove no set of facts in support of the claims that would entitled the plaintiff to

---

[5]Plaintiff filed a separate § 1983 action against various LCF prison officials and medical staff and certain DOC officials, alleging denial of adequate medical care at LCF and alleging certain constitutional violations during a disciplinary action. *Callahan v. Poppell, et al.*, Case No. CIV-03-551-F.  This case is still pending.

[6]To the extent Plaintiff seeks a declaratory judgment under 28 U.S.C. §2201, and further relief under 28 U.S.C. §2202, Amended Complaint at 13, the undersigned recommends that the Court abstain from exercising such jurisdiction.  The federal declaratory judgment statute provides "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. §2201.  While this statute is an enabling act which vests the federal courts with power and competence to issue a declaration of rights, *see Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112, (1962), the question of whether this power should be exercised in a particular case is vested in the sound discretion of the district courts. *Id.*; *see also St. Paul Fire and Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1168 (10th Cir. 1995).  As discussed *infra*, it is recommended that Plaintiff's claims against SWMC be dismissed as Plaintiff fails to show that any alleged inadequate medical care he received at SWMC constitutes state action.  Additionally, Plaintiff has failed to identify or timely serve the remaining Defendants.  Therefore, there is no "actual controversy" to resolve. Accordingly, it is recommended that the Court abstain from exercising its federal declaratory judgment jurisdiction under 28 U.S.C. §§ 2201, 2202.

relief." *Roman v. Cessna Aircraft Co.*, 55 F.3d 542, 543 (10th Cir. 1995).  In reviewing the sufficiency of a complaint under this standard, all well-pleaded factual allegations of the complaint must be accepted as true and construed in the light most favorable to Plaintiff. *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990).  Further, a *pro se* plaintiff's complaint should be broadly construed.  *See Haines v. Kerner*, 404 U.S. 519 (1972).  However, this broad reading "does not relieve the [*pro se*] plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "This is so because a *pro se* plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Id.*

The United States Court of Appeals for the Tenth Circuit has held that a district court may *sua sponte* dismiss a *pro se* complaint under Rule 12(b)(6) "when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." *Hall*, 935 F.2d at 1110 (citation omitted).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  In considering a motion for summary judgment, the Court reviews the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party. *Kaul v. Stephan*, 83 F. 3d 1208, 1212 (10th Cir. 1996);

*Calhoun v. Gaines*, 982 F.2d 1470, 1472 (10th Cir. 1992); *Manders v. State of Oklahoma*, 875 F.2d 263, 264 (10th Cir. 1989).  A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Material facts" are "facts which might affect the outcome of the suit under the governing law."  *Id.*  Additionally, if the moving party demonstrates an absence of evidence regarding an issue on which the nonmoving party will bear the burden of proof at trial, the nonmoving party can defeat summary judgment only by designating with evidence outside of the pleadings "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

III. Defendant Southwestern Medical Center

Defendant SWMC has moved to dismiss the complaint on multiple grounds, including insufficiency of service of process and failure to state a viable claim under 42 U.S.C. § 1983, the ADA, the RA or the CRIPA.

A. Sufficiency of Service of Process

Defendant SWMC moves to dismiss the action against it pursuant to Fed. R. Civ. P. 12(b)(5) on the ground that service of process was legally insufficient.  Defendant SWMC alleges that Plaintiff attempted service by certified mail sent to "Southwestern Medical Center."[7]  According to Defendant SWMC, the certified mail was signed for by a secretary who was not an authorized official or agent of SWMC as required by the provisions of Fed. R. Civ. P. 4(h).  Defendant SWMC asserts that this service did not

---

[7]Although SWMC refers generally to the mailing of a "Complaint," copies of both the original complaint and Plaintiff's amended complaint are attached to its motion.  SWMC Motion, Ex. A.  Therefore, it appears that SWMC received copies of both the original complaint and the amended complaint.

comply with the requirements for service under the Federal Rules of Civil Procedure, and therefore the action against SWMC should be dismissed.

Although such service was not in strict compliance with the applicable service rules and statutes, *see Okla. Stat. tit.* 12, §§ 2004(C)(1)(c)(3) and (C)(2) and Fed. R. Civ. P. (4), the undersigned finds SWMC received actual notice of the cause of action and there was substantial compliance under the circumstances. *See Kitchens v. Bryant County Nat'l Bank*, 825 F.2d 248, 255-256 (10th Cir. 1987) (noting that "the federal courts generally take a permissive attitude towards the mechanism employed for service of process when defendant actually receives notice") (quotation omitted). *See Booth v. McKnight*, 70 P.3d 855, 862 (Okla. 2003) ("The classic statement of constitutionally adequate notice is that which is reasonably calculated, under the circumstances, to inform interested persons of the pending litigation and to afford them an opportunity to advocate their interest in the cause.") (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950)); *Graff v. Kelly*, 814 P.2d 489, 495 (Okla. 1991) (holding that the "Oklahoma Pleading Code requires substantial compliance in order for the trial court to have jurisdiction over the person of the defendant"). Accordingly, it is recommended that Defendant SWMC's motion to dismiss under Fed. R. Civ. P. 12(b)(5) for insufficient service of process be denied.

B. Plaintiff's § 1983 Claims Against SWMC

Defendant SWMC alternately moves to dismiss Plaintiff's § 1983 claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for relief. SWMC contends that it is a "for profit, privately owned hospital[]" which does not have a direct contract with DOC for

the treatment of inmates.  SWMC Motion at 5.  Therefore, Defendant SWMC contends Plaintiff's § 1983 claim fails because SWMC cannot be considered a state actor.[8] Defendant SWMC has presented affidavits and evidentiary documents in support of this contention.  *Id.*, Affidavit, Ex. D.   After being advised of the provisions of Fed. R. Civ. P. 56, 12(b) and LCvR 56.1 with respect to his response to the evidence in support of Defendant's motion, Plaintiff filed three responses with attached documents.  Because the undersigned has considered evidence presented by the parties outside the pleadings, the SWMC motion has been construed as a motion for summary judgment.  Fed. R. Civ. P. 12(b); *Wells v. Shalala*, 228 F.3d 1137, 1140 n.1 (10th Cir. 2000).

Plaintiff seeks damages from Defendant SWMC under 42 U.S.C. § 1983, based on his allegation that the hospital was deliberately indifferent to his serious medical needs.  In order to state a claim under § 1983 against Defendant SWMC, Plaintiff must allege that SWMC, while acting under color of state law, deprived Plaintiff of "rights, privileges or immunities secured by the Constitution" or other federal law.  42 U.S.C. § 1983.  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *West v. Atkins*, 487 U.S. 42, 49 (1988)[9](quoting *United State v. Classic*, 313 U.S. 299, 326 (1941)); *see also*

---

[8]Defendant SWMC also cites *Johnson v. Wackenhut*, Case No. CIV-03-483-R, in which United States District Judge David L. Russell adopted that portion of a Report and Recommendation finding that SWMC should be granted summary judgment based on lack of evidence that SWMC was a state actor liable under § 1983 when treating an LCF inmate.  *See* Doc. No. 34 (Order dated November 8, 2003).

[9]In *West*, the Supreme Court held that a physician who contracted with the state to treat state inmates acted under color of state law for purposes of §1983 when he provided medical treatment to such inmates.  *West*, 487 U.S. at 55-56.

*Tarabishi v. McAlester Reg'l Hosp.*, 827 F.2d 648, 651 (10th Cir. 1987) ("The provisions of § 1983 apply only to persons who deprive others of rights secured by the Constitution or laws of the United States and who act under color of state statute, ordinance, regulation, custom or usage.") (citation omitted).

When, as here, nothing in the record suggests that a defendant is a state officer or state employee, the Court may regard that defendant as a private party. *Pino v. Higgs*, 75 F.3d 1461, 1465 (10th Cir. 1996) ("Nothing in the record suggests that Wolf is a state officer or state employee, and thus the district court properly considered her a private individual."). A private party's conduct is "fairly attributable to the state" for purposes of § 1983 liability if two conditions are met: "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the state is responsible. Second, the private party must have acted together with or . . . obtained significant aid from state officials or engaged in conduct otherwise chargeable to the State." *Id.* (quoting *Wyatt v. Cole*, 504 U.S. 158, 162 (1992)) (internal quotations and citation omitted)).[10]

In his Amended Complaint Plaintiff asserts that "[t]he Defendant's [sic] above named, are employees of the Southwest Medical Center, presumed to be contracted by the State of Oklahoma and/or the Wackenhut/Lawton Correctional Center, and thus all Defendants were working under the color of state law as employees [sic] of the

---

[10]The Tenth Circuit has recognized the "flexible approach" and various tests applied by the Supreme Court to determine if the conduct of a private individual or entity constitutes state action. *See Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995) (discussing and applying the nexus test, the symbiotic relationship test, the joint action test, and the public function test). Regardless of the test applied, the elements outlined in *Pino* must be present for conduct to be considered state action. *Id. at* 1447-48.

Southwestern Medical Center." Amended Complaint at 5. Defendant SWMC has presented evidence by affidavit that it is a for-profit, privately-owned hospital and that it does not have a contract with the Oklahoma Department of Corrections (DOC) to provide services for its inmates.[11] SWMC Motion at 5, Ex. D. In response to Defendant SWMC motion Plaintiff simply disagrees with Defendant's evidence. Plaintiff's Objection to Defendant's Motion to Dismiss [Doc. No. 25] at 3 (unpaginated) ("The Plaintiff is a ward of the state, and was taken by the Department of Corrections to Southwestern for medical treatment. Southwestern was obviously working for the State and being paid by the State when they treated the Plaintiff, thus they should properly be considered a state actor."). Despite Plaintiff's conclusions and presumptions, he has provided no evidence in support of his allegation that SWMC was acting on behalf of the State when he was treated on September 30, 2001. Moreover, he has failed to contradict SWMC's evidence that no contract exists between the State of Oklahoma (DOC) and SWMC for the medical care of Oklahoma inmates incarcerated at LCF. On this record, the undersigned finds there is no evidence from which a jury could find that SWMC was a state actor within the meaning of § 1983. *See Blum v. Yaretsky*, 457 U.S. 991, 1012 (1982) (holding that the decision of physicians and administrators of a privately owned and operated nursing home to transfer Medicaid patients was not state action); *Pino*, 75 F.3d at 1466-67 (holding that a private emergency room physician was not acting under color of state law

---

[11]Neither party disputes that LCF is a private prison. *See* Amended Complaint, Ex. 2 (letter dated November 6, 2001, to Plaintiff from Dennis Cunningham, a DOC administrator for Private Prison Administration, concerning several inquiries made by Plaintiff). Accordingly, the undersigned finds there is no dispute of material fact that at the time he was taken to SWMC for emergency treatment, Plaintiff was an Oklahoma inmate in the custody of DOC and incarcerated at LCF, a private prison.

10

for purposes of a § 1983 action when he examined, detained and certified plaintiff for transport under New Mexico's commitment statute); *Loh-Seng Yo v. Cibola General Hosp.*, 706 F.2d 306, 308 (10th Cir. 1983) (holding that hospital's receipt of governmental funds, extensive governmental regulation, and localized geographic monopoly enjoyed by the hospital did not establish state action required for a § 1983 suit; plaintiff (a physician) made no allegation that those facts involved the state in any significant manner in the specific conduct of which he complained); *Ward v. St. Anthony Hosp.*, 476 F.2d 671, 675 (10th Cir. 1973) ( rejecting the argument in § 1983 action by physician against private hospital that receipt of government aid and the attendant state regulation in that case, without more, gave rise to state action); *Briley v. State*, 564 F.2d 849, 855-56 (9th Cir. 1977) (noting "in this and other circuits, private hospitals and physicians have consistently been dismissed from § 1983 actions for failing to come within the color of state law requirement of this section"); *McIlwain v. Prince William Hosp.*, 774 F.Supp 986, 989-90 (E.D. Va. 1991) (finding private hospital's mere acceptance of a prison inmate for emergency care did not make the hospital a "state actor" for purposes of § 1983 where no contractual relationship existed between hospital and prison, and hospital did not routinely treat prison inmates); *but see Conner v. Donnelly*, 42 F.3d 220 (4th Cir. 1994) (holding that private physician who treated inmate on referral of prison physician acted under "color of state law," though he did not have contractual relationship with state to provide medical services to inmate).

Accordingly, having concluded that there is no evidence that SWMC acted "under color of state law" or that the alleged failure to provide proper medical care or proper

supervision of SWMC employees constituted state action, the undersigned recommends that summary judgment be granted to SWMC with respect to Plaintiff's §1983 claims.[12]

C.  Plaintiff's Claims Against SWMC Under the ADA and RA

Plaintiff also raises claims against Defendant SWMC under Title II of the Americans With Disabilities Act (ADA), 42 U.S.C. § 12132, and the Rehabilitation Act of 1973 (RA), 29 U.S.C. § 794.  According to Plaintiff, Defendant SWMC discriminated against him, resulting in inadequate medical attention.  Amended Complaint at 5 and 10. Defendant SWMC contends that Plaintiff's claim - that he was discriminated against because he was a prisoner and the staff at SWMC believed he was faking his injuries - fails to state a cognizable claim under either the ADA or the RA.  Therefore, Defendant SWMC moves for dismissal of such claims pursuant Fed. R. Civ. P. 12(b)(6).

Title II of the ADA provides in pertinent part:  "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity,[13] or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Similarly, the RA prohibits discrimination against disabled individuals "under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

In response to Defendant's SWMC's motion, Plaintiff asserts that Defendant is trying to mislead the court with "hair-splitting of semantics."   Plaintiff claims that

---

[12]In any event, the undersigned finds that Plaintiff has alleged, at most, "[m]edical malpractice [which] does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Daniels v. Williams*, 474 U.S. 327, 3303-31 (1986).

[13]"Public entity" is defined as "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government."  42 U.S.C. §12131(1).

SWMC discriminated against him not because he was a prisoner but because he was a "disabled prisoner." The undersigned agrees with Defendant SWMC that Plaintiff's claim is clearly based on alleged discrimination due to his status as a prisoner.[14] Plaintiff's alleged discrimination based on his status as a prisoner fails to claim that he was denied services by a governmental entity or discriminated against in the provision of services <u>because</u> of a qualifying "disability."[15]

Plaintiff has responded to SWMC's motion claiming that he is a "disabled" person. *See* Plaintiff's Doc. Nos. 25, 35, 36 and 37 and attached documents. Although the medical records submitted by Plaintiff reflect that he has certain physical limitations, Plaintiff's amended complaint cannot be read as claiming that he was discriminated against in the provision of medical services because of his claimed disability. The ADA and RA do not provide a federal cause of action to challenge medical treatment provided to a disabled prisoner. *See Fitzgerald v. Corrections Corp. of America*, __F.3d__, 2005 WL

---

[14]For example, in his amended complaint, Plaintiff alleges: "Plaintiff was shocked . . . that an inmate would receive treatment less in quality and respect than his peers on the street. After Plaintiff heard, the guard from LCF tell SWMC staff that LCF told him that Plaintiff was faking, immediately Plaintiff understood the quality of treatment he was receiving. The direct quote: <u>LCF medical infirmary told him that Plaintiff was faking, and that he had been in segregation for several months and was trying to get back into LCF medical infirmary.</u>" Amended Complaint at 7 (emphasis in original).

Plaintiff also alleges: "Doe No. 2, told the Xray technician, to quote: 'It's OK, don't do any more – he is from LCF. This implied to Plaintiff that he was worth less than other citizens. It is discrimitory (sic) and should not be tolerated by the Board at SWMC. Plaintiff asserts, that because he was a prisoner from LCF, and therefore he should not receive equal treatment as all other citizens do or should in Oklahoma." Amended Complaint at 10.

[15]A "qualified individual with a disability" means:

[A]n individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2).

827139 (10th Cir. April 11, 2005); *Rashad v. Doughty*, No. 00-6088, 2001 WL 68708 (10th Cir. Jan 29, 2001); *Moore v. Prison Health Services, Inc.*, No. 98-3310, 1999 WL 1079849 (10th Cir. Dec. 1, 1999).[16]  *See also Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (concluding that the ADA "does not create a remedy for medical malpractice").  Thus, the undersigned finds that Plaintiff's allegations fail to establish the denial of access to a service, program or activity required to state a claim pursuant to the ADA or RA. Accordingly, it is recommended that SWMC's motion to dismiss be granted with respect to these claims.

   D.  Plaintiff's Claims Against SWMC Under the CRIPA

   Defendant SWMC seeks dismissal of Plaintiff's claim under the Civil Rights of Institutionalized Persons Act (CRIPA), citing 42 U.S.C. § 1997e, and contending that such claim applies only to actions brought to redress prison conditions.

   The CRIPA authorizes the Attorney General to initiate or intervene in a civil action on behalf of state institutionalized persons who are subject to "egregious or flagrant conditions" which deprive them of their constitutional or federal statutory rights.   42 U.S.C. § 1997a(a).  Courts have consistently found that this Act does not provide for a individual right of action.  *See* 42 U.S.C. § 1997a(c) (complaint must be signed by Attorney General); *see also Bieros v. Nicola*, 860 F.Supp. 226, 235 (E.D. Pa. 1994); *Stone-El v. Fairman*, 785 F.Supp. 711, 714 n. 3 (N.D. Ill. 1991); *Cooper v. Sumner*, 672 F.Supp. 1361 (D.Nev. 1987); *Rudd v. Polsner*, No. 99-4466, 2000 WL 1206516, at *1 (6th Cir. Aug. 18, 2000) (unpublished opinion).  In any event, this Act applies only to actions

---

[16]These and any other published dispositions are cited herein as persuasive authority pursuant to Tenth Circuit Rule 36.3.

brought against an "institution," defined by the Act as any "facility or institution--(A) which is owned, operated, or managed by, or provides services on behalf of any State or political subdivision of a State," and which facility or institution meets certain other requirements.[17] 42 U.S.C. § 1997(1)(A).  Plaintiff cannot show that Defendant SWMC is an institution as contemplated by this statute.

The undersigned recommends that SWMC's motion to dismiss be granted as to Plaintiff's claim under the CRIPA, 42 U.S.C. § 1997a, and that such claim be dismissed for failure to state a claim upon which relief may be granted.

IV.  <u>John Doe Defendants</u>

In the caption of his amended complaint Plaintiff names three unidentified SWMC employees (John Does) as Defendants.  Amended Complaint at 8-10.[18]  Defendants John Doe Number One and Number Two move to dismiss the complaint against them for insufficiency of service of process and insufficiency of process.  In an attached affidavit it is asserted that SWMC does not know the identities of these defendants, cannot confirm whether they are employed by the hospital and has no authority to accept service

---

[17]Such facility or institution meeting the criterion of § 1997(1)(A) must also be:
(I) for persons who are mentally ill, disabled, or retarded, or chronically ill or handicapped;
(ii) a jail, prison, or other correctional facility;
(iii) a pretrial detention facility;
(iv) for juveniles--(I) held awaiting trial;(II) residing in such facility or institution for purposes of receiving care or treatment; or (III) residing for any State purpose in such facility or institution....; or
(v) providing skilled nursing, intermediate or long-term care, or custodial or residential care.
42 U.S.C. § 1997(1)(B).

[18]In the body of the complaint Plaintiff describes the alleged wrongful conduct of John Doe Number One and John Doe Number Two.  Amended Complaint at 8-10.  Although Plaintiff describes "Doe No. 3" as a female attendant who accompanied Plaintiff in the ambulance back to LCF, he has written in the margin a notation indicating that she is "not a defendant."  *Id.* at 10.  Additionally, the docket record shows that Plaintiff attempted service on only John Does One and Two by certified mail.  Doc. No. 19.

on their behalf.  John Does Motion at 3-4 and Ex. F.  It is further asserted that service on the two John Does is insufficient on the same factual grounds argued in SWMC's Motion - that the receipt by a SWMC secretary of certified mail containing a summons and complaint addressed separately to "John Doe No. 1, SWMC-Emergency Rm. Worker" and to "John Doe No. 2, SWMC" - does not amount to valid service.  *Id.*  Although the undersigned has recommended that Defendant SWMC's motion to dismiss for insufficiency of service of process be denied based on Plaintiff substantial compliance with the applicable service statutes that resulted in Defendant SWMC's actual notice of suit, the same result is not appropriate with respect to Defendants John Doe Number One and John Doe Number Two.

"Personal service under Rule 4 serves two purposes: notifying a defendant of the commencement of an action against him and providing a ritual that marks the court's assertion of jurisdiction over the lawsuit." *Okla. Radio Assocs. v. FDIC*, 969 F.2d 940, 943 (10th Cir. 1992).  Thus, "Rule 4 service of process provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served." *Id.*  As previously discussed, strict compliance with the Oklahoma service statues is not always required. *Kitchens*, 825 F.2d at 256.   However, in this case there is no indication that Plaintiff's attempted service provided actual notice to the unidentified and unnamed John Doe Defendants. *See Booth v. McKnight*, 70 P.3d at 862 ("Notice is a *sine qua non* element of personal jurisdiction, without which the court wields no authority over the persons sought to be haled before it.").

16

As more than 120 days have elapsed since the filing of the amended complaint without service being made on these Defendants, the complaint is subject to dismissal as to them under Fed. R. Civ. P. 4(m) in the absence of justification for the failure.[19] *Jones v. Frank*, 973 F.2d 872, 873-74 (10th Cir. 1992). The Court is required to consider whether a plaintiff has shown good cause for failure to timely effect service. *See Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1994). Plaintiff has not directly addressed the cause for his failure to obtain service on the John Doe Defendants. However, the undersigned notes that since February of 2004, Plaintiff has repeatedly moved for additional time to furnish service papers to the Court citing as one basis for his request the need to request the names of certain unknown Defendants. Although Plaintiff was granted several extensions of time, when he filed his Amended Complaint in May of 2004, he was still unable to identify the John Doe Defendants.

Even if Plaintiff could show good cause for his failure to effect service, however, the undersigned finds that the claims against the John Doe Defendants are subject to dismissal as barred by the relevant statute of limitations as discussed below. Thus, the undersigned finds that a permissive extension of time to serve these Defendants is unwarranted.[20]

---

[19]Rule 4(m) states that a court on its own initiative, after notice to the plaintiff, "shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period."

[20]Plaintiff has also sought leave and extensions of time to conduct discovery in order to identify such Defendants. Because, as discussed hereafter, the statute of limitations ran as to the John Doe Defendants well before Plaintiff requested such discovery, any extension of time to identify the unknown Defendants would be futile.

Any attempt by Plaintiff to file a second amended complaint naming the John Doe Defendants would be untimely, as the applicable two-year statute of limitations expired shortly after his original complaint was filed in September of 2003.[21]   *See Fratus v. Deland*, 49 F.3d 673, 674-75 (10th Cir. 1995) (holding that a district court may consider an affirmative defense *sua sponte* "when the defense is 'obvious from the face of the complaint' and '[n]o further factual record [is] required to be developed.'") (quoting *Yellen v. Cooper*, 828 F.2d 1471, 1476 (10th Cir.1987)).

Plaintiff first named John Doe Nos. 1, 2, and 3, as defendants in his amended complaint filed on May 4, 2004, alleging that he had received inadequate medical care at SWMC on September 30, 2001.  In the body of his original complaint Plaintiff referred to an "emergency room/X-ray technician" and to a "List of Defendants" which was omitted from the complaint; however, he did not name any John Doe Defendants. Complaint [Doc. No. 1].  Additionally, the original complaint contained no details regarding the role of the unknown medical staff in the alleged violations.  In his amended complaint Plaintiff, for the first time, set forth certain factual allegations regarding the John Doe Defendants.  Amended Complaint at 1 and 8-10.  [Doc. No. 20].  Any attempt by Plaintiff at this time to identify and name the John Doe Defendants would be futile because such claims would be untimely as they would not relate back to the date of

---

[21]The period of limitations periods for § 1983 actions are governed by the forum state's statute for personal injury action.  *Wilson v. Garcia*, 471 U.S. 261, 276-280 (1985).  In Oklahoma, the statute of limitations for personal injury actions is two years.  *See* Okla Stat. tit. 12, § 95(3); *see also Mead v. Grubbs*, 841 F.2d 1512, 1522 (10th Cir. 1988) (holding that in Oklahoma, the applicable period of limitations for a § 1983 action is two years). Accrual of the cause of action is governed by federal law.  *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995). "A civil rights action accrues when 'facts that would support a cause of action are or should be apparent."  *Id.* (citation omitted)

Plaintiff's original complaint or even his amended complaint under Federal Rule of Civil Procedure 15(c)(3).[22]

The Tenth Circuit Court of Appeals has held that a plaintiff's amended complaint substituting named defendants for unknown defendants referred to in the original complaint as John Doe defendants amounts to adding a new party, which requires that the plaintiff meet all requirements set forth in Rule 15(c)(3). *Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004). In *Garrett*, the Circuit Court upheld the district court's ruling that "as a matter of law, a plaintiff's lack of knowledge of the intended defendant's identity is not a 'mistake concerning of the proper party' within the meaning of Rule 15(c)(3)." *Id.* Joining seven of the eight circuits that had addressed the issue, the Tenth Circuit held in *Garrett* that "[a] plaintiff's designation of an unknown defendant as 'John Doe' in the original complaint is not a formal defect of the type Rule 15(c)(3) was meant to address," and therefore replacing unidentified officials with specifically named officials does not relate back to the original complaint, so as to avoid the relevant statute of limitations. *Id.* at 696-97 (listing cases).

Plaintiff has failed to identify the unknown John Doe Defendants within the two-year limitations period governing his claims. Under the holding in *Garrett*, it would be futile for Plaintiff to now seek to further amend his complaint naming the unidentified

---

[22]Federal Rule of Civil Procedure 15(c) provides that an amended complaint relates back to the date of the original pleading when (1) permitted by the statute of limitations applicable to the action; (2) the claim or defense arose out of the occurrence set forth in the original pleading; or (3) the amendment changes a party and the foregoing provision (2) is satisfied. When "relation-back" is based on (3), the new party must also have received notice of the suit within the period set under Fed. R. Civ. P. 4(m), must not be prejudiced in maintaining a defense, and should have known that, but for a mistake in identity, the suit would have been brought against it. Fed. R. Civ. P. 15(c) (1)-(3).

medical personnel he has referred to as John Does, as such claims would be barred by the applicable statute of limitations. *Garrett*, 362 F.3d at 697. Moreover, Plaintiff shows no basis for statutory or equitable tolling of the limitations period under Oklahoma law.[23] *See id.* (applying Colorado's equitable tolling law). Plaintiff states that he intends to learn the unidentified medical personnel during discovery, but he has not alleged facts suggesting any efforts much less diligent efforts to bring his lawsuit against the individual medical defendants during the two-year limitations period. *See Russell-El v. United States*, No. 99-1124, 1999 WL 987350, at *3 (10th Cir. Nov. 1, 1999) (equitable tolling is not applicable to a *Bivens* action when the plaintiff failed to allege extraordinary circumstances preventing him from bringing his claims despite diligent efforts).

Therefore, the undersigned finds that the motion to dismiss for failure to serve John Doe Numbers One and Two should be granted because it would be futile to permit Plaintiff an extension of time to identify and serve these individuals.

---

[23]As explained by the Tenth Circuit, Oklahoma law restricts the bases on which a limitation period may be tolled:

> In general, Oklahoma permits the tolling of a statute of limitations in two circumstances. First, the existence of a "legal disability" provides proper grounds for equitable tolling. Although the exact definition of this term remains unclear, Oklahoma courts have applied this provision only for plaintiffs whose competency is impaired or who have not reached the age of majority. . . .
> Second, the Oklahoma discovery rule tolls the statute of limitations until an injured party knows of, or in the exercise of reasonable diligence, should have known of or discovered the injury, and resulting cause of action. Therefore, if defendants engage in false, fraudulent or misleading conduct calculated to lull plaintiffs into sitting on their rights, the limitations period may not be triggered.

*Alexander v. Oklahoma*, 382 F.3d 1206, 1217 (10th Cir. 2004) (internal citations and quotations omitted). The Tenth Circuit has rejected prisoners' claims that Oklahoma law tolls the two-year limitations period during their confinement. *Miskovsky v. Gray*, No. 03-6186, 2004 WL 1909462, *4 (10th Cir. Aug. 27, 2004) (listing other unpublished Tenth Circuit cases and finding that the Oklahoma Supreme Court has never squarely addressed whether Oklahoma has a tolling provision for civil lawsuits filed by prisoners). Moreover, "[t]he fact that plaintiff may not have discovered the legal basis for his claim until later did not extend the time in which he was required to bring his action." *Woodward v. Sedgwick County Jail Adm'r*, No. 96-3202, 1997 WL 31548, at * 2 (10th Cir. Jan. 27, 1997).

The undersigned further finds that to the extent that Plaintiff has named John Doe Number Three as a Defendant in his amended complaint, for the reasons just discussed, this unknown defendant should be dismissed, *sua sponte*, from the cause of action. Even construing Plaintiff's *pro se* complaint liberally, the undersigned finds that it is "obvious from the face of the [amended] complaint" that the affirmative defense statute of limitations would bar any attempt by Plaintiff to further amend his complaint to bring a claim against John Doe Number Three. *Garrett*, 362 F.3d at 697. *See also Fratus*, 49 F.3d at 674-75 (district court may consider an affirmative defense *sua sponte*).

## V. Defendant Dr. Robert Morgan

Plaintiff admits that he made a "scrivener's error" in the amended complaint when he named Dr. Robert Morgan as a defendant. He has moved to amend his complaint a second time to name Dr. Richard Morgan as the proper defendant.[24] [Doc. Nos. 25 and 30]. In support of his motion to amend, Plaintiff alleges that he intended to name Dr. Richard Morgan who is identified in the medical records as his treating physician at SWMC. *See* Amended Complaint, attached Southwestern Medical Center "Specimen Inquiry" ordered by Dr. Richard Randall Morgan, M.D., on September 30, 2001. Even assuming Plaintiff's misnaming of Dr. Robert Morgan as Defendant in the amended complaint qualifies as a "mistake concerning the proper party" and meets all other requirements of Rule 15(c)(3), and further assuming Plaintiff could show good cause for

---

[24]The Federal Rules of Civil Procedure require that each summons be "directed to the defendant...." and be served "with a copy of the complaint." Fed. R. Civ. P. 4(a) and (c)(1). It is apparent that receipt by a secretary at SWMC of the summons and amended complaint naming Dr. Robert Morgan does not show that Dr. Richard Morgan has been served with process. Likewise, there is no evidence that Dr. Richard Morgan has received notice of the claims against him in the complaint or amended complaint, and the applicable two-year statute of limitations has now expired. *Mead v. Grubbs*, 841 F.2d at 1522.

his failure to effect timely service of process upon Defendant Richard Morgan, *see Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1994), the undersigned finds that it would be futile to allow such amendment.

Plaintiff first named the physician who treated him at SWMC in September of 2001, as a defendant in his amended complaint filed on May 3, 2004.  Therefore, the action against this Defendant, even if properly identified, was untimely.  The applicable two-year limitation period had expired well before Plaintiff filed his amended complaint, and for the same reasons just discussed with respect to the unidentified John Doe defendants, the naming of Dr. Robert Morgan did not relate back to the filing of the complaint.  *Garrett*, 362 F.3d at  697.  Thus, it would be futile for Plaintiff to further amend his complaint to name Dr. Richard Morgan, as such amendment would likewise be untimely.  *Id.*

Moreover, even assuming *arguendo* that Plaintiff had filed a timely action against Dr. Richard Morgan and could demonstrate that Dr. Morgan was a state actor for § 1983 purposes, he has wholly failed to allege the personal participation of Dr. Richard Morgan in the alleged constitutional violations.  Personal participation is necessary for individual liability under Section 1983.  *See Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976); *see also Houston v. Reich*, 932 F.2d 883, 888 (10th Cir. 1991) ("Liability under section 1983 cannot rest upon the doctrine of respondeat superior.").  This element requires an "affirmative link" between the constitutional deprivation and the supervisor's personal participation, his exercise of

control or direction, or his failure to supervise. *See Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997).

Here, Plaintiff has failed to allege that Dr. Richard Morgan had any knowledge of the statements or actions allegedly made by the emergency room attendants. Nor does he allege that Dr. Richard Morgan in any way restricted the number of X-rays taken on September 30, 2001, or otherwise limited the medical treatment Plaintiff was given. Even liberally read, the amended complaint does not contain any suggestion of personal participation on the part of Dr. Richard Morgan in any alleged unconstitutional action. Therefore, even if Plaintiff were allowed permission to further amend his complaint to correctly identify Dr. Richard Morgan, such claim would be subject to dismissal for failure to state a claim under § 1983. *See Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 518 (10th Cir. 1998) ("In other words, a defendant may not be held liable under § 1983 unless he or she subjected a citizen to the deprivation, or caused a citizen to be subjected to the deprivation.").

Under these circumstances, it is recommended that Dr. Robert Morgan be dismissed as a misnamed party and for failure to serve pursuant to Fed. R. Civ. P. 4(m). Additionally, because it would be futile for Plaintiff to further amend his complaint to include a claim against Dr. Richard Morgan, it is recommended that Plaintiff's motion to amend be denied.

## RECOMMENDATION

For the reasons set forth above, it is recommended that the Defendant SWMC's motion to dismiss [Doc. No. 23] brought under Fed. R. Civ. P. 12(b)(5) be DENIED and

that Defendant SWMC's motion to dismiss for failure to state a claim under the ADA, RA, and CRIPA be GRANTED. It is further recommended that Defendant SWMC's motion to dismiss [Doc. No. 23] for failure to state a claim under § 1983 be construed as a motion for summary judgment and so construed, be GRANTED. It is also recommended that the motion to dismiss by Defendants John Doe Number One and Two [Doc. No. 24] be GRANTED. As to Defendant John Doe Number Three and Defendant Dr. Robert Morgan, it is *sua sponte* recommended that these Defendants be DISMISSED for failure to correctly identify and timely serve. Finally, it is recommended that Plaintiff's motions to amend, motions to clarify, and motion for appointment of counsel [Doc. Nos. 25, 33, 35 and 36] be DENIED. As previously stated, Plaintiff's motion for an extension of time [Doc. No. 38] has been denied by separate order. Plaintiff is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by May 19, 2005, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. Plaintiff is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 29th day of April, 2005.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE